CARPENTER, APPELLANT, v. NELSON, RESPONDENT.

(No. 3,013.)

(Submitted September 27, 1911.   Decided October 21, 1911.)

[118 Pac. 272.]

*Trial by Court Without Jury—Weight of Evidence—Question for Court—Conclusiveness of Finding.*

1. In an action tried by the court without the aid of a jury, in which defendant's motion, made at the conclusion of plaintiff's case, for judgment in his favor was granted, the question of the weight to be given to the testimony of plaintiff and his witnesses was one for the determination of that court, with which the appellate court will not interfere.

*Appeal from District Court, Gallatin County; J. Miller Smith, a Judge of the First Judicial District, presiding.*

ACTION by Albert Carpenter against Harry Nelson.   Defendant had judgment, and plaintiff appealed.   Affirmed.

*Mr. J. L. Staats,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. A. Bolinger* submitted a brief in behalf of Respondent and argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

This is the second appeal in the case.   (See *Carpenter* v. *Nelson,* 41 Mont. 392, 109 Pac. 857.)   The cause was remanded to the district court of Gallatin county with directions to overrule defendant's demurrer to the amended complaint.   Such action was taken, and after issue of fact joined, the cause was tried to the court sitting without a jury.   At the conclusion of plaintiff's case the defendant moved for judgment in his favor.   The motion was granted and judgment was entered accordingly, from which judgment an appeal has been taken to this court.

The testimony shows, in effect, that the plaintiff purchased fifty-five head of steers of the defendant at Bozeman, Montana, and received a bill of sale therefor, as follows:

"December 7, 1907.

"This is to certify that at a public auction sale of cattle of estate of Patrick Finnegan, deceased, Albert Carpenter bought 55 head of yearling steers, brand 'X' on right hip and right ear cropped.

"(Signature)  HARRY NELSON,

"Admr. P. Finnegan, Esq."

The plaintiff and his witnesses testified that after the sale the cattle were driven twenty-six miles into the country to the ranch of one Knadler. The next day they were branded, and at that time the plaintiff noticed one steer in the herd which, as he says, "did not correspond exactly to the Finnegan mark, that is, on one of the animals." The next spring, however, it was discovered that this animal did not bear the "X" brand, but a brand belonging to one Joseph Davis. Mr. Davis afterward claimed and secured the animal from the plaintiff. Neither the plaintiff nor any of his witnesses were able to testify positively that the Davis steer was among those purchased at Bozeman. They did testify circumstantially to the precautions taken by them in driving the cattle home, for the purpose of making a *prima facie* showing that the Davis steer was not picked up on the road but was one of the steers turned over to the plaintiff at the sale. Carpenter, however, was unable to give positive testimony upon the subject. He very frankly testified as follows: "As far as I know, these fifty-five head of cattle knocked off to me by the auctioneer were the same bunch we took home. I could not say positively that this steer that wasn't branded 'X' was obtained by me from the Finnegan estate, because I couldn't see all the brands, but I didn't see him come into the bunch. We took as good care of these cattle as we could; it was to my advantage to do so. I called Mr. Knadler's attention particularly to it along the road and every time we passed through cattle I had him count them and I did myself; accidents are liable to happen, one might have got in or changed at the bridge, or something like that; but to the best of my knowledge

and belief we had the same animals that we started from Bozeman with and we branded them the next day.''

Knadler, who helped drive the cattle, testified: ''If we didn't lose the 'X' steer there and pick up another one during the time I and Mr. Carpenter were moving the steers from one place to another, I suppose that this steer that didn't have the 'X' brand that has been testified to was in the bunch that Carpenter bought. We got up to my place about eight o'clock in the evening; if I remember, it just begun to get dusk at a point about seven miles from home. If these cattle were mixed with others from this point on, it would have been difficult to distinguish and separate them.''

Several very interesting questions of law are raised in the brief of counsel for appellant and have been argued at the bar of this court; but we do not find it necessary or think it proper to decide them. The question of the weight to be given to the testimony of the plaintiff and his witnesses was essentially one for the district court to determine. Had that court decided that he had made a *prima facie* case, we should be very loath to disturb the finding. On the other hand, as the court held in effect that it was not satisfied from the testimony that all of the steers purchased were not delivered, we are equally reluctant to disturb the finding. There is no question under the evidence but that fifty-five head of steers were delivered to him and taken out of the corral at Bozeman. Neither is there any question but that he had the same number in his possession when he reached his home ranch. When he arrived there he had but fifty-four ''X'' steers and one Davis steer. The judgment for the defendant ordered by the district court necessarily involves the finding that he had failed to prove that he had not lost an ''X'' steer on the road and picked up the Davis steer in place thereof. As has heretofore been said, however, the question of the weight to be given to the testimony of the witnesses was for the district court, and that court having determined

that it was not sufficiently convincing to make out a case for the plaintiff, we shall not interfere.

.The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.